REED *v.* REED.

1. Husband and Wife—Antenuptial Contract—Fraud—Rescission—Equity—Jurisdiction.

Where wife, after discovery that her husband had misrepresented value of property deeded to her to induce her to sign antenuptial contract, did not rescind contract, but sold said property, she may not maintain suit in equity to recover difference between value as represented and actual value, but her remedy, if any, is action at law for damages. Butzel, Potter, and Sharpe, JJ., dissenting.

2. Same—Receiver—Guardian and Ward.

Where, in wife's suit for husband's fraud in misrepresenting value of property deeded to her to induce her to sign antenuptial contract, bill did not ask for divorce from bed and board or for separate maintenance, but parties continued living together, court had no power to appoint receiver for property of husband, who is claimed to be incompetent, or to continue such officer, or to provide that he pay out of husband's property a certain sum monthly for support of both parties, but if husband is incompetent, guardian should be applied for in probate court.

Appeal from Wayne; Searl (Kelly S.), J., presiding. Submitted June 28, 1929. (Docket No. 151, Calendar No. 34,520.) Decided March 7, 1930. Rehearing denied June 2, 1930.

Bill by Ella Reed against Alfred Reed and Bankers Trust Company of Detroit, receiver for Alfred Reed, for fraud in antenuptial contract. From a decree for plaintiff, both parties appeal. Reversed, and bill dismissed.

*Walter M. Nelson,* for plaintiff.

*O. Z. Ide,* for defendant.

BUTZEL, J. (*dissenting*). Plaintiff ·married defendant November 8, 1922. At the time she was a widow 51 years of age. She had had a very hard life and was struggling for a livelihood. She had been the mother of 14 children, only four of whom had survived. At or about the time she first met defendant, she was a janitress, working very arduously to make a living. She knew him approximately two years prior to her marriage to him. Defendant had been married three times previously, and was in his 80th year when he married plaintiff.

The parties entered into an antenuptial agreement, which contained legal descriptions, without stating the values, of each parcel of property owned by defendant. The agreement provided that in consideration of plaintiff's surrender of dower rights and all interest in defendant's property and estate, she should receive an old three-story brick building with the lot on which it stood, on East Congress street, Detroit, Michigan, some four blocks or thereabouts from the county building.

It is plaintiff's contention that she was a very simple, inexperienced, and unsuspecting hard-working woman to whom defendant represented that the piece of property he deeded to her was worth $50,000; that, knowing defendant to be a successful real estate dealer with much experience, and be-

lieving in him to the extent of being willing to marry him, she relied upon these representations, and immediately after the antenuptial agreement was signed, she did marry him; that shortly thereafter, upon attempting to sell the property, she discovered that she had been deceived; that the property was worth only approximately $9,000, for which amount she sold the property; that defendant repeatedly promised to turn over to her a sufficient additional amount so as to make good his representations; that she has waited ever since she ascertained the fraud until the time of bringing suit on account of these promises. She sold the property for $9,000 to a doctor who had operated on her daughter. The property was worth, and should have brought, $12,000. It was worth that sum then, and was worth no more at the time of the hearing. Plaintiff's inexperience in business is shown in the manner in which she spent this $9,000. She has but little, if any of it, left. Her testimony shows her credulity.

Defendant had been sick for some time prior to the marriage, and plaintiff not only faithfully looked after her duties as a housewife, but also acted as a nurse for him. He had been in the real estate and money loaning business. He loaned money on second and third mortgages. At the time of the marriage he was worth upwards of $300,000. He had been penurious and almost miserly prior to the marriage, and has not changed his habits. Plaintiff had acted as defendant's housekeeper for several months prior to their marriage, had assisted in collecting rents, and should have known the chances she was taking. Since the marriage, defendant did not even buy her a pair of hose. When she sold the property she was obliged to spend part of the proceeds to buy clothing, and also to supply food for herself and at times for defendant. She estimated that she

spent $3,000 for the support of herself and defendant.

Plaintiff was conscientious in looking after defendant, and more than fulfilled her part of the bargain, as admitted by defendant's counsel. She was more of a menial servant than a wife. Even at the time of the hearing of this case, she was carefully looking after him and preparing him so that he could come to court. Both plaintiff and defendant were recalcitrant witnesses. Instead of punishing defendant for contempt in not obeying the orders of the court, on account of defendant's advanced age, the court appointed a trust company as receiver of his property. Plaintiff was warned that a continual refusal to be frank with the court would not help her. The trial court was better able to determine whether her attitude was due to ignorance, or a fear of damaging her case, or court fright and nervousness that inexperienced witnesses often display.

There seems to be no doubt but that plaintiff had full and ample opportunity to examine the property deeded to her by defendant prior to entering into the antenuptial agreement, which was prepared by defendant's counsel. Plaintiff was represented at defendant's expense by counsel whom she had employed in the past. He was asked to be present by defendant's counsel so that plaintiff would be properly protected. Her counsel testified that she told him that, prior to her marriage, she had acted as defendant's agent in collecting rent from the Congress street property; that at the meeting in the office of defendant's counsel, at the time the antenuptial agreement was entered into, there were present with him, defendant, plaintiff and plaintiff's counsel, and that at that meeting "it was not definitely stated

that the property at that time was worth $50,000, that it would be worth $50,000;'' that he was not asked to pass upon the value of the property or the fairness of the agreement, but only advised plaintiff as to its correctness in form and its meaning.

Plaintiff testified positively in regard to defendant's representations in regard to the property being worth $50,000 and her reliance upon these representations. Defendant, on the other hand, stated that he made no representation whatsoever. This seems unlikely under the circumstances, and the trial court so found.

The attorney who represented defendant at the time the antenuptial agreement was drawn, but who does not represent him in this case, is a man of the highest reputation and in whose veracity counsel for plaintiff and defendant expressed their absolute confidence. Plaintiff's counsel, however, claims that after six years, the attorney's memory was faulty. This attorney testified that just prior to the execution of the antenuptial agreement, it was stated by defendant to plaintiff ''that property is worth from $20,000 to $25,000 if you will keep it.''

The court held that there had been misrepresentation, and that plaintiff was entitled to $8,000 more, the difference between $12,000, the real value of the property, and $20,000, the value stated at the time the antenuptial agreement was executed; that plaintiff was entitled to proper support, and in view of defendant's advanced age, the court continued the receivership and ordered the receiver to pay plaintiff $150 per month, to be used for household expenses, during the balance of defendant's lifetime.

Both parties appealed, plaintiff claiming that $8,000, the amount of the award, should have been $38,000, and that plaintiff should also recover the

$3,000 paid by plaintiff for household expenses, clothing, etc., over a period of six years. Defendant claims laches and estoppel on the part of plaintiff in bringing suit, and further, that there was no fraud, as plaintiff had full opportunity to examine the property prior to entering into the antenuptial agreement.

There was no laches such as to bar equitable relief in this case. Where parties lived in close relationship with one another and particularly where plaintiff had delayed bringing suit through promises by defendant to repair the wrong, and defendant has not been prejudiced by the delay, there has not been laches so as to bar equitable relief. *Backus* v. *Backus,* 207 Mich. 690; *Kaiser* v. *Kaiser,* 213 Mich. 660; *Nickerson* v. *Nickerson,* 209 Mich. 134.

The record convinces us that the trial court was correct in finding that defendant misrepresented the value of the property; that plaintiff was inexperienced, and her relations with defendant were such that she had sufficient reason to believe in his better judgment, and to rely upon his representations.

Were this a case of rescinding a contract and necessarily placing parties back in their former positions, it would be necessary for plaintiff to tender back the property to defendant. It is obvious that the parties cannot be put back in their former position. Under the circumstances, then, the only way the court can give plaintiff the relief which she seeks, is to order the payment to her of the difference between the value of the Congress street property and what defendant represented it to be. There is no showing on the part of defendant that he objected to the sale of the Congress street property. On the contrary, it is shown that he promised to make good plaintiff's loss through his misrepre-

sentations. The court was correct in holding that plaintiff was not estopped from bringing suit. It was shown that from the time of the marriage up to the present time, the Congress street property was not worth over $12,000. Notwithstanding the fact that she only realized $9,000 from the sale of the property, the court found the real value of the property to be $12,000, and defendant was given credit for this amount.

It is true that the marriage was entirely devoid of romance, and each party was looking for material benefits. However, it was not an ordinary real estate deal.

Defendant, in plaintiff's eyes, was an experienced and successful real estate dealer who knew values. She was absolutely ignorant and inexperienced in business matters. She has carried out not only the spirit but the letter of her agreement. The false representation of value was intentionally made by defendant to plaintiff, an inexperienced person, with absolutely no judgment as to values or business. Notwithstanding the fact that plaintiff had seen the property, she had every reason to rely upon defendant's representations. They were statements of fact and not mere opinions. They were fraudulently made for the purpose of inducing plaintiff to sign the antenuptial agreement. Under these circumstances, plaintiff was entitled to relief. *Gugel* v. *Neitzel*, 248 Mich. 312. The bill of complaint was for the purpose of setting aside or enforcing the antenuptial agreement and giving plaintiff such other relief as she might be entitled to. Equity had jurisdiction.

As an inducement for the marriage, defendant also promised that he would properly support plaintiff. This is conceded by defendant's counsel. De-

fendant failed to provide proper support for himself as well as plaintiff. Plaintiff seeks relief on this account. The record shows that the sum of $3,000, which was part of the proceeds from the sale of the Congress street property, was expended by her for the support of herself and defendant, and she asks that this sum be returned to her. The court denied this relief, but it provided for the future support of both plaintiff and defendant.

Defendant is a very aged man, and so near senility that it was found necessary to appoint a receiver for his property during the pendency of the suit so he could not continue to conceal or dissipate it. The court was confronted with the question of how to provide proper support for both plaintiff and defendant during the balance of defendant's lifetime. It decreed that the receivership should continue, and directed that the receiver pay plaintiff the sum of $150 a month during the balance of defendant's lifetime, so that she could purchase the necessities of life for both defendant and herself. While this undoubtedly was for the best interest of both parties, and, under the circumstances, a very wise and practical solution of their difficulties, nevertheless, the court acted beyond its powers in appointing a receiver for defendant's property during the balance of his lifetime. It is necessary to vacate this order.

The court may appoint a receiver *pendente lite* or for the purpose of satisfying a money judgment or a decree in certain cases, or for other purposes provided by law. We know of no authority, however, by which a person can be divested of the control of all of his property for the balance of his lifetime in order to support himself and wife.

It is herewith ordered that the receiver appointed *pendente lite* be discharged 30 days from the time

of the filing of this opinion. This shall be without prejudice to the right of plaintiff to take such steps as she may be entitled to, and at such time as she may choose, in order to secure proper support, in the event that a satisfactory settlement cannot be made between the parties so as to provide for proper support for both of them. The decree of the lower court is reversed as to the continuance of the receivership and payment of $150 per month to plaintiff, but otherwise it is affirmed. The case is remanded to the lower court for the purpose of carrying out these instructions. Inasmuch as both parties have appealed, there will not be costs to either party.

POTTER and SHARPE, JJ., concurred with BUTZEL, J.

WIEST, C. J. I am not in accord with the opinion prepared by Mr. Justice BUTZEL.

Both parties appealed. There may be a modicum of lay idea of equity in the case, but law is involved, including equity jurisdiction and established procedure, and I am unable to concur in establishing such a precedent as affirmance herein will afford.

An antenuptial contract is a pecuniary bargain in contemplation of marriage, and usually has sordid features. Fraud and deceit may render such a contract void or accord a right of action for damages at law, but does not afford a suit in equity in case of a sale of the property so received after full knowledge of the alleged fraud.

Plaintiff discovered the fraud she now complains of when she sought to sell the property. She did not rescind the antenuptial contract, but, with full knowledge of the fraud, went ahead and sold the property and thereby remitted herself to remedy, if any, in an action at law for damages.

The bill did not ask a divorce from bed and board or for separate maintenance; neither does, nor could, the decree grant any such relief. The parties are living together, and the decree provides that the receiver is to manage defendant's affairs and out of defendant's property pay $150 each month for the support of both parties. The court had no power, under the bill, to appoint a receiver, and no power at the hearing to continue such an officer. If, as claimed, defendant was incompetent to manage his affairs, a guardian should have been applied for in the probate court. The procedure indulged was contrary to every principle of equity jurisprudence, void at inception and in all its stages. The bill stated no case in equity; the proofs negatived equity jurisdiction; the court had no power to appoint the receiver to administer defendant's estate or decree support of the family or enter decree for damages occasioned by defendant's fraud.

The decree should be reversed, and the bill dismissed, without costs.

CLARK, McDONALD, NORTH, and FEAD, JJ., concurred with WIEST, C. J.