*In re* REED'S ESTATE.

GORELICK *v.* MILLER.

WILLS—CONTESTED WILL.
   In will contest, in which objections were based upon alleged mental incompetency, undue influence, misrepresentation and coercion, judgment for contestants is reversed and will admitted to probate.

Appeal from Wayne; Campbell (Allan), J. Submitted June 13, 1935. (Docket No. 43, Calendar No. 38,241.) Decided October 31, 1935.

Philip Gorelick presented the will of Alfred Reed for probate. Objections thereto were filed by Retta Reed Miller and others. Contest certified to circuit court. Judgment for contestants. Proponent appeals. Reversed and remanded.

*Monaghan, Crowley, Reilley & Kellogg,* for appellant.

*Friedman, Meyers & Keys (Sylvan Rapaport,* of counsel), for appellee Miller.

*O. Z. Ide (Sylvan Rapaport,* of counsel), for appellee Hardy.

POTTER, C. J. Alfred Reed died June 28, 1933. After his death his will, dated November 20, 1930, was offered for probate. Objections were filed to its admission to probate as the last will and testament of deceased on the ground of his mental incompetency to make and execute the same, and

undue influence, misrepresentation and coercion. May 10, 1934, application was made to the probate court to certify the contest to the circuit court for trial in accordance with 3 Comp. Laws 1929, § 15958. It was so certified and the trial came on before the circuit court without a jury July 9, 1934, and resulted in a finding that at the date of the execution of this will Alfred Reed was of sound mind, and that the will was void because of undue influence.

Proponent appeals, alleging, among other things, the court erred in finding the burden of proof was not upon contestants to show undue influence, but upon proponent to show freedom from undue influence; and in holding proponent and his attorney had not acted in good faith and fair dealing in the execution of the will.

Contestants claim this court should not consider whether there was evidence to support the trial court's findings because no motion for a new trial was made, and no assignment is made that the findings of the trial court were against the preponderance of the evidence. Court Rule No. 64 (1933) provides, on appeals in civil cases, error cannot be assigned for total lack of evidence on a material question unless such lack of evidence has been called to the attention of the court during the trial or on a motion for a new trial.

At the conclusion of the testimony, proponent moved an order be entered approving the will, which could not be entered in a jury case if there was any evidence to go to the jury, and could not be granted in this case unless the trial court found either that there was no testimony to sustain contestants' claim, or the testimony preponderated in favor of proponent. After contestants filed their brief in this court raising these questions, proponent, under

Court Rule No. 72 (1933), asked leave to supplement the record by the stenographer's transcript of the proceedings in the trial court showing the only question considered by the trial court was the question of undue influence. Throughout the trial, proponent contended and urged there was no proof of mental incompetency or undue influence. The general assignments of error cannot, under Court Rule No. 66 (1933), be deemed insufficient if they reasonably inform the opposite party and the court of the error relied upon, and they allege the court erred in denying the motion of proponent to admit the will to probate and in finding that the will was void and was procured through undue influence. We think the assignments of error sufficient to raise the question. *Genrow* v. *Modern Woodmen of America,* 151 Mich. 250; *Wolfe* v. *Stack,* 153 Mich. 445.

Alfred Reed was a veteran of the Civil War. He had been in the cattle business as a drover and, after retiring from that business, had been engaged in loaning money on real estate mortgages and land contracts. He had been married four times, by his first wife having three daughters, one of whom died shortly after testator's death. He had by close dealing and thrifty habits accumulated considerable property. He cared handsomely for his three daughters, all of whom, measured by ordinary standards, he had made rich by conveying to each of them in their own right real estate of substantial value. After the death of his third wife, he married his fourth wife in 1922, when 79 or 80 years of age. His widow was contestants' principal witness. She had been a janitress in one of testator's buildings prior to her last matrimonial venture. She made an antenuptial contract with her husband, and then filed a bill against him to set aside the antenuptial agree-

ment upon the ground of fraud, and obtained the appointment of a receiver for his property, a proceeding which came subsequently to this court and was disposed of in *Reed* v. *Reed,* 250 Mich. 53. By this proceeding, she not only compelled her husband to pay out a considerable sum of money in fees and expenses, but temporarily deprived him of his property. About the time this proceeding was disposed of in the Supreme Court, she filed an application in the probate court to have Mr. Reed, her husband, declared mentally incompetent, and she also filed a bill for divorce against him, the testimony in which case was taken in September, 1930, her petition in the probate court to have her husband declared mentally incompetent having been filed September 18, 1930. In the divorce proceedings, a settlement was obtained. She had obtained approximately $9,000 in property by the antenuptial agreement, and by the settlement of her divorce case procured $5,000 more. The daughters of the deceased paid little attention to him and, like his wife, were apparently interested principally in his property.

The testimony is undisputed that testator did not intend to give to his children any other property than they had received and were to receive under the will in question. The provisions of his will, so far as his wife and children were concerned, were precisely what he intended they should be.

(a) His wife, at the age of 45 or 50, a janitress in one of testator's buildings, married him when he was 79 or 80 years of age, not for any love for him, but because she would be relieved of the drudgery and toil of a janitress and have a home and comfortable sustenance. He did well by her. She was the one benefited financially by the marriage. He made the antenuptial agreement with her by which

she obtained property for which she received $9,000. Afterwards she filed a bill against him for fraud to get more money, and caused a receiver of his property to be appointed, and then, after being beaten in that case in this court, sought more money in divorce proceedings instituted against him in which she obtained a settlement of $5,000 in addition, or $14,000 in all, plus her living. She had proceedings pending against him, up to the time the divorce proceedings were terminated, to have him declared mentally incompetent. Could anything be more natural for a man whom the trial court found to be of sound and disposing mind and memory, under the circumstances, in view of the treatment he had received from his wife, than that he should say in his last will and testament she had been fully provided for by virtue of the settlement agreement made and entered into as evidenced by a certain order of the circuit court for the county of Wayne, in chancery, under which her claims were fully satisfied and waived.

(b) The testator, in his will, said of his daughter, Mary Hardy, he gave nothing to her for the reason she had been amply and fully provided for in the past, and had been instrumental in seeking to have him adjudged an incompetent by the probate court. He believed, and the testimony indicates, not only that Mary Hardy was instrumental in initiating these proceedings, but was the prime mover therein.

(c) His daughter, Retta Miller, had been amply provided for by testator. She had no children and testator felt, and the facts do not show he was mistaken when he said in his will, she had more than sufficient to meet her needs.

(d) The testimony shows he believed that though his daughter, Mrs. Mackay, had joined in the peti-

tion to have him adjudged incompetent, she had been induced to subscribe the petition by Mary Hardy. She had not received as much property from him as had his other two children, and he made provision for her in his will. The facts justify the recitals in his will, and they are not shown by the testimony to have been false, but true. He gave to her a one-half interest in the lots owned by him in Royal Oak township, in Oakland county.

(e) After the daughters of testator had instituted proceedings to have him declared incompetent, he employed a lawyer to defend him. Apparently the case came on for hearing in the probate court. Judge Command, of the probate court, saw the situation that the controversy was principally over property and no doubt in good faith thought if that could be placed where neither the testator, his wife, nor his daughters could dispose of it, the bone of contention would rest in peace.

The probate court did not find Mr. Reed, the testator, was mentally incompetent. On the other hand, he was treated as competent and the suggestion was made that his property be trusteed with the Bankers Trust Company. Mr. Reed, the testator, agreed to that. The daughters and their attorney, and everyone else, thought it would be all right to trustee this property with the Bankers Trust Company. And, in pursuance of this agreement and understanding, the trust agreement consisting of some recitals and 20 paragraphs, was made and executed, and the probate proceedings were dismissed.

Testator had been successful in this litigation, but, being mentally competent so to do, he naturally was embittered against those whom he had nourished and sustained, who were seeking to have him, from whom they received all their money, declared men-

tally incompetent. Like many another man, he may have been actuated somewhat by a vengeful spirit.

Philip Gorelick had been acquainted with the testator for 15 years. They were close personal friends, and had been associated together for a number of years in real estate and building business. The testimony indicates the testator claimed he had made a lot of money through Mr. Gorelick by financing him in the construction of buildings, Gorelick looking after the construction and the details. By reason of this close relationship and the mutual financial interests of the parties, they probably had succeeded in making considerable money, although the testimony indicates testator charged Gorelick 10 per cent. on the money borrowed when it was necessary for Gorelick to borrow money of him. Gorelick was treated as a close personal friend of the testator by testator's wife. There was nothing unnatural in the testator's desire to leave Gorelick, with whom he had been associated in making money, something. And so, immediately after the testator had been successful in defeating in the probate court the proceedings brought by his wife and the proceedings by his daughters to have him declared mentally incompetent, and the next day after the agreement was made and entered into between the testator and the Bankers Trust Company, the testator went to his attorney and had his will prepared, and by this will he gave certain real estate in trust to Philip Gorelick, namely, the other one-half interest in the Royal Oak township real estate above mentioned, to pay over the income of the same and ultimately to deliver the property itself to his grandson, the child of Mary Hardy; and then, finally, he gave the remainder of his property to Philip Gorelick, absolutely, who, as said by the will, had been his friend for many years. The testator's will is

intelligent, coherent, and naturally disposes of his property, under all of the circumstances.

The will is said to have been procured by fraud and undue influence practiced by Philip Gorelick and Joseph Beckenstein upon the testator. The record is entirely barren of testimony tending to support this claim. Testator lived nearly three years after the execution of this will. He was found by the trial court to be mentally competent to make and execute the will but, notwithstanding he apparently fully realized what he had done, he did not, so far as this record shows, complain that he had been unjustly dealt with. The rest and residue of the property which it is claimed testator was unduly influenced to give to Philip Gorelick consists of certain property on Grand River avenue, the value of which is not indicated by the record, and approximately $3,000 in land contracts of doubtful value.

At the time his will was made, Mr. Reed was of sound mind and memory, and, unless he was coerced or defrauded, he had a right to dispose of his property as he saw fit.

Undue influence will vitiate a will only when it is sufficient to overcome the free agency of the testator so that the will which results from his intelligent action speaks not the will of the testator himself, but of someone else. Property owned and possessed by any person of full age and of sound mind and memory may be disposed of by them as they see fit. The law provides for the making and execution of wills, and how property shall pass under the statutes of descent and distribution in case the testator does not seek to dispose of it by will. The fact the testator disposes of his property in some other way than under the statutes of descent and distribution, instead of indicating a lack of testamentary capacity, indicates the testator knew he had a right to dispose

of his property, and availed himself of the provisions of the statute, disposing of his property as he saw fit.

The fact the testator, found by the trial court to be of sound and disposing mind and memory, disposed of his property under the law of wills is no evidence of his mental incompetency. Nor is it any indication that undue influence was exercised upon him by anyone. The property possessed by the testator was his. He could do with it as he saw fit. His widow has no cause to complain. Her last marital speculation netted her $14,000 and relieved her from continuing on the job as a janitress. The testator had made ample provision for all his children. His will was executed with all the statutory formalities. There was ample reason in the conduct of his wife and children toward him to prompt the testator to do what he did do in the disposition of his property by will.

The record as settled by the trial court does not contain contestants' objections to the probate of the will. It is stipulated that such objections may be considered as part of the record. The motion on the part of proponent to supplement the record settled by the trial court and the motion on the part of contestants to take additional testimony are denied. The case was tried by able counsel. We should not ordinarily approve the trial of cases piecemeal. It does not appear the granting of the first motion is necessary, or the granting of the second motion would affect the result.

Formerly, the rule in this State was that the burden of proof to establish the testamentary capacity of a testator rested upon the proponents of a will. *Beaubien* v. *Cicotte*, 8 Mich. 9; *Taff* v. *Hosmer*, 14 Mich. 309; *Aikin* v. *Weckerly*, 19 Mich. 482; *McGinnis* v. *Kempsey*, 27 Mich. 363; *Prentis* v. *Bates*, 93

Mich. 234 (17 L. R. A. 494); *Rivard* v. *Rivard,* 109 Mich. 98 (63 Am. St. Rep. 566); *Buxton* v. *Emery,* 139 Mich. 341; *In re Mansbach's Estate,* 150 Mich. 348; *In re Thayer's Estate,* 188 Mich. 261; *In re Curtis' Estate,* 197 Mich. 473; *In re Gardnier's Estate,* 198 Mich. 203.

Section 14212, 3 Comp. Laws 1929, enacted as a part of the judicature act of 1915 (Act No. 314, Pub. Acts 1915), provides:

"In proceedings for the probate of wills, it shall not be necessary for the proponent in the first instance to introduce any proof to show the competency of the decedent to make a will, but the like presumption of mental competency shall obtain as in other cases."

This statute has been held to change the rule existing in this State up to the time of its adoption, and to make it incumbent upon the contestants in will cases to assume the burden of proof of mental incapacity. *In re Curtis' Estate, supra; In re Gardnier's Estate, supra; In re Rosa's Estate,* 210 Mich. 628; *Brereton* v. *Estate of Glazeby,* 251 Mich. 234; *In re Walker's Estate,* 270 Mich. 33.

The trial court found the testator mentally competent to make the will in question, and with this finding we are in accord.

The burden of proof is upon contestants to show fraud and undue influence. *In re Shepardson's Estate,* 53 Mich. 106; *Prentis* v. *Bates,* 88 Mich. 567; *In re Bailey's Estate,* 186 Mich. 677.

The common experience of mankind does not demonstrate that all men are dishonest and watching and seeking an opportunity to perpetrate a fraud or to take advantage of the weak and helpless. *Maynard* v. *Vinton,* 59 Mich. 139 (60 Am. Rep. 276).

Undue influence to vitiate a will must have been such as to amount to force and coercion, destroying the free agency of the testator, and there must be proof that the will was obtained by this coercion. Undue influence cannot be presumed, but must be proved and in connection with the will and not with other things. A will may not be set aside on the ground of undue influence unless such influence amounted to a degree of constraint such as the testator was too weak to resist and such as deprived him of his free agency and prevented him from doing as he pleased with his property. Neither advice, nor arguments, nor persuasion will vitiate a will made freely from conviction, though such will might not have been made but for such advice or persuasion. Undue influence is a species of fraud and, like fraud, must remain undefined by the courts. All that can be done is to lay down certain general principles, and what is said above embraces those general rules which have been adduced from adjudicated cases. *Maynard* v. *Vinton, supra.*

In *Sullivan* v. *Foley,* 112 Mich. 1, the court approved instructions to a jury that the testator was at liberty to select in his own discretion the objects of his bounty; he was in a better condition than anyone else to know what disposition ought to be made of his property; the jury was not to determine whether the will itself was a proper and suitable one, and the view of the jury upon that subject must not be allowed to influence in the least their verdict; if testator was mentally competent to make his will, he had an undoubted legal right to make it; undue influence, in order to defeat a will, must amount to force or coercion, and any influence short of this would not be undue influence; undue influence cannot be presumed; a will may not be set aside for

undue influence unless such influence amounted to constraint too great for the testator to resist, depriving him of free agency; neither advice, nor argument, nor persuasion will vitiate a will freely made, even though the will might not have been made but for such advice or persuasion; persuasion and appeals to the affection, ties of kindred, sentiments of gratitude, or pity for future destitution do not constitute undue influence; no presumption of undue influence arises from the fact that testator gave his property elsewhere than to his brother and sister; the fact that the person alleged to have used undue influence had ample opportunity therefor is no evidence such opportunity was exercised.

"Opportunity alone for wrongdoing is not sufficient. Outside of such opportunity, there must be evidence of acts or circumstances from which the jury may find that the fraud was perpetrated—the undue influence exercised." *In re Ganun's Estate,* 174 Mich. 286, 294.

See, also, *In re Ver Vaecke's Estate,* 223 Mich. 419; *In re Cottrell's Estate,* 235 Mich. 627; *Hoagland* v. *Reedy,* 237 Mich. 691.

In *Re Curtis' Estate, supra,* the court instructed the jury that,

"The influence to vitiate this will must have been such as to amount to force and coercion, destroying his free agency and there must be proof that the will was obtained by this coercion."

The court further instructed the jury that the undue influence which will defeat a will need not be by physical force, constraint or coercion, but it must be an influence, either of fraud, artifice, or some other art of human ingenuity and cunning and that an overmastering will, such as subordinated the will

of the testator to the will of another, so that the alleged will does not show the free will of the testator, but is the will and purpose of another. The court held, relying upon *Maynard* v. *Vinton, supra,* and *In re Ganun's Estate, supra,* there was no error in the instructions of the court.

We think the trial court should have found, under the undisputed facts in this case, against contestants upon the question of fraud and undue influence. *Severance* v. *Severance,* 90 Mich. 417; *Lamb* v. *Lippincott,* 115 Mich. 611; *Peninsular Trust Co.* v. *Barker,* 116 Mich. 333; *Blackman* v. *Andrews,* 150 Mich. 322; *In re Ganun's Estate, supra; In re Williams' Estate,* 185 Mich. 97.

Undue influence cannot be predicated upon opportunity alone, nor upon a disposition of property not in accord with the statutes of descent. There is no attempt made to show that any expressed intention of the testator has not been carried out. On the contrary, all that was expressed was carried into the will as made. Where the person of the testator was by common consent committed to the care of the person charged with the exercise of undue influence, there was held to be no presumption that undue influence had been exercised. There is no showing here of restraint, or of control, or of exclusiveness. After the execution of the will, the testator lived with his wife, talked freely with his neighbors, and spent considerable time on two different occasions in conversation with the attorney who drew the will. On no occasion after the will was made did he manifest any displeasure about what he had done, or make any complaint as to restraint or lack of perfect freedom to do as he wished. *Severance v. Severance, supra.*

The testimony as to the relations between the testator and Mr. Gorelick serves rather to explain in

connection with the other testimony why testator made Mr. Gorelick the object of his bounty. *Lamb v. Lippincott, supra.*

The most that may be said in support of contestants' claim is that there may have been opportunity for the exercise of undue influence, but it is well settled that this is not enough. *Severance v. Severance, supra; Blackman v. Andrews, supra; In re Shanahan's Estate,* 176 Mich. 137; *In re Foerster's Estate,* 177 Mich. 574; *In re Williams' Estate, supra; In re Lembrich's Estate,* 243 Mich. 39; *In re Hayes' Estate,* 255 Mich. 338.

The judgment of the trial court is reversed, with costs, and the case remanded with directions to admit the will to probate.

NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred in the result.

The late Justice NELSON SHARPE took no part in this decision.