HOAGLAND v. REEDY.

1. WILLS—MENTAL CAPACITY—EVIDENCE—SUFFICIENCY.
   In a will contest case, evidence of mental incapacity *held*, insufficient to take said question to the jury.

2. SAME—UNDUE INFLUENCE—MERE OPPORTUNITY TO INFLUENCE —UNEQUAL DISTRIBUTION OF PROPERTY.
   Mere opportunity to influence, and the fact that a will makes an unequal distribution of property, *held*, insufficient to take to the jury the question of undue influence.

[1]Wills, 40 Cyc. p. 1331; [2]Id., 40 Cyc. pp. 1145, 1166, 1167, 1332.

3. SAME—ILLICIT RELATIONS NO EVIDENCE OF UNDUE INFLUENCE.
   Criminal sexual relations between testator and his house-
   keeper, to whom he willed the bulk of his property, stand-
   ing alone, *held*, no evidence of undue influence.

4. SAME—NATURAL JUSTICE.
   That a will is contrary to natural justice, may be con-
   sidered in a proper case.

5. SAME — WILLING PROPERTY TO HOUSEKEEPER NO VIOLENCE TO
   NATURAL JUSTICE.
   Where testator had neither wife nor children, his brothers
   had not visited him for years, and he gave small legacies
   to some of his brothers, his sister, and a girl who formerly
   lived in his home, the fact that he gave the bulk of his
   property to his housekeeper, who had lived with him for
   several years, did no violence to natural justice.

6. SAME—ILLICIT RELATIONS NO EVIDENCE OF UNDUE INFLUENCE.
   Testimony of illicit relations between testator and his
   housekeeper, to whom he willed the bulk of his property,
   was inadmissible to show undue influence in the making
   of the will, in the absence of other evidence tending to
   show undue influence in connection therewith.

Error to Ingham; Collingwood (Charles B.), J.
Submitted January 26, 1927.    (Docket No. 94.)    De-
cided April 1, 1927.

Mary Hoagland and another presented for probate
the last will of E. A. Reedy, deceased.    The will was
allowed in the probate court, and Peter Reedy and
others appealed to the circuit court.    Judgment for
proponents on a directed verdict.    Contestants bring
error.    Affirmed.

*E. D. Ricketts, O. J. Hood,* and *W. S. Seelye,* for
appellants.

*A. M. Cummins,* for the estate.

SNOW, J.    The testator, Abe Reedy, 57 years old,

[3]Wills, 40 Cyc. p. 1169; [4]Id., 40 Cyc. p. 1170; [5]Id., 40 Cyc. p.
1148; [6]Id., 40 Cyc. p. 1149; 17 L. R. A. (N. S.) 477; 28 R. C. L.
148; 4 R. C. L. Supp. 1802.

died at his home in the city of Mason, June 2, 1925. His will, now the object of contest, was executed May 13th, preceding.   By its terms three brothers, one sister, and one Viola Reedy, a girl whom he had once taken into his home, and who was then living with his divorced wife, were each given $1,000; the residue of the estate, approximately $65,000, was devised and bequeathed to one Mary Hoagland, quoting from the will, "for the reason that said Mary Hoagland has cared for me for some time, and more especially for the kind care she has rendered me when I have been very sick at different times."

The will's allowance was contested by four brothers of deceased on the ground of mental incapacity to make a will, and undue influence on the part of the residuary legatee.   The trial judge directed a verdict in favor of the proponent, and contestants bring error.

Testator was divorced from his wife, and had no children.   One sister lived in Mason, and four brothers, contestants here, lived out of the State. He had come to Michigan when but seven years old, and early in life had engaged in the junk and hide business and conducted a second-hand store.   Later he became largely interested in the lumber business and operated several mills in different parts of the State.

During the years none of his brothers ever came to see him until shortly before his death, and there had been little if any correspondence between them.   He had visited some of them some 30 years before his death and once had gone there to attend a funeral. His sister Jennie lived in the same town with him and often visited him.   She has not appealed.

Mary Hoagland, the favored legatee, was about 45 years of age, and had known testator for 20 years. She became acquainted with him while working at his home before his separation from his wife, and had

later, with her husband, moved into a house of his, and he had taken his meals there. As the years passed, contestants claim that their relations became meretricious, and that he took her out in his car, had sexual relations with her, and finally her husband left her and she and her child and testator were left the sole occupants of the house, where they lived in adulterous relations. She claimed she received no wages and simply worked for her board and that of her daughter.

Mental Capacity. That Mr. Reedy was sorely afflicted with disease before he died is certain. He had suffered a stroke of paralysis; in a greater or lesser degree he had suffered with Bright's disease, arterio sclerosis, heart trouble, aphasia, and a blood test for syphilis made in March, 1925, showed positive X plus 3. The stroke came after the execution of the will. On that day he had been to Lansing to consult an eye specialist. The other diseases were chronic, and he was taken worse in January, 1925, when he was confined to his bed for several weeks. During his last sickness he looked after his business affairs to a great extent, and there is little, if any, testimony of his being at all irrational except when suffering from aphasia, which he was not when the will was executed.

His various ailments gradually sapped his strength and finally caused his death. But we find nothing in the record on the question of lack of testamentary capacity upon which a jury could possibly have found its existence. Nor do we understand that contestants are particularly insistent on more than a claim of impaired testamentary capacity, making the testator thereby the more susceptible to the machinations and improper influences of Mrs. Hoagland. And on this subject Mr. Densmore, the attorney who drew the will, testified:

"I considered his mind in perfect condition. I thought he was very alert and knew exactly what he

was doing and how he was disposing of his property. I had known him quite familiarly. I should consider that he was not easily influenced, that he received very little dictation from any one. I think he had some peculiarities along that line that were commonly known in the community. When Mr. Reedy said something that was in his mind, it usually went, and that was the end of it."

See *In re Morris' Estate,* 228 Mich. 555, and cases there cited.

Undue Influence. Briefly, the circumstances claimed and pointed out in contestants' brief as tending to show that testator was unduly influenced in making his will are these: Mrs. Hoagland had lived in his house for seven years; it was near his warehouse where he spent most of his time; he visited the house frequently during the day; he once made a trip to Jackson with her where they had sexual relations; she was frequently at the warehouse; she rode with him in his automobile; her husband left her; she then lived alone with him, and had illicit relations; testator in 1924 said he was afraid of her, and wanted to pay her off; she got no money for her work; a day or two before Christmas testator said he was going to have a chicken for Christmas, but she made him get a turkey; she made him leave his office and go home with her contrary to his wishes; he said he couldn't come to see his sister any more because of her; once she had a check of his which she at first denied, but later admitted and pulled it out of her dress; she spoke about a will and inquired what lawyer they should get; she talked with his brother about a will, and overheard his conversation with testator on the subject.

It is well settled that mere opportunity to influence, and the fact that a will makes an unequal distribution of property, is not sufficient to go to a jury on the question of undue influence. *In re Carlson's Estate,* 218 Mich. 262; *In re Morris' Estate, supra.*

But little more can be said of the situation here. Opportunity was present. She lived in his home for several years. That their relations in the past had been criminal there is some proof. But standing alone this is no evidence of undue influence. The incidents of influence and control over testator pointed out and relied upon by contestants are trivial and remote, and not at all appealing. Testator was of strong personality. He generally knew what he wanted and he followed his own desires. Unless a jury should be permitted in every case to approve or disapprove of the manner of the disposition of one's property it surely should not have been permitted to interfere here. That a will is contrary to natural justice, may be considered in a proper case. *In re Allen's Estate*, 230 Mich. 593, and cases. The manner in which he disposed of his property might be called natural. It was in no sense remarkable. He had no wife or children. His brothers had paid no attention to him for half a century. His sister was given a legacy, as was also a girl who formerly lived in his home. The residuary legatee had been good to him. She had kept house for him for seven years. Whatever his relations with her, he undoubtedly felt kindly toward her. Thus disposing of his property did no violence to natural justice and is not surprising. We think the trial judge was right in refusing to submit the case to the jury.

Contestants complain of the exclusion of testimony tending to show the existence of meretricious relations between testator and Mrs. Hoagland, to wit, that in 1917 she visited him at his room in the old Clark House in Mason, and in 1915 went with him to Jackson, and that at the home they slept together and had illicit relations. The court held the testimony inadmissible, quoting, "unless you show some facts which tend to prove that, outside of those relations, she

coerced him to make a will." This ruling, under the circumstances, was not erroneous. The testimony would have been competent, as the court intimated, had there been other facts and circumstances tending to show undue influence to be considered in connection therewith. But there were none.

We have examined other assignments relative to the rejection of testimony offered by contestants, and find no reversible error in the court's rulings. Had the rejected testimony been received, there would still be lacking any issue for the jury to determine.

The judgment is affirmed, with costs to proponent.

SHARPE, C. J., and BIRD, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.