## In re LANGLOIS ESTATE.

1. WILLS—UNDUE INFLUENCE—ACTS OF KINDNESS—OPPORTUNITY.
   Undue influence sufficient to vitiate the will of a mentally competent testator may not be inferred from acts of kindness or from existence of opportunity, but must be proved.

2. SAME—UNDUE INFLUENCE.
   Influences to induce testamentary disposition may be specific and direct without becoming undue as it is not improper to advise, persuade, solicit, importune, entreat, implore, move hopes, fears, or prejudices or to make appeals to vanity, pride, sense of justice, obligations of duty, ties of friendship, affection, or kindred, sentiment of gratitude or to pity for distress and destitution, although such will would not have been made but for such influence, so long as the testator's choice is his own and not that of another; that influence, to avoid a will, must be such as prevented testator from doing as he pleased with his property.

3. SAME—DISINHERITANCE OF ADULT CHILDREN.
   Claim of contestants, testator's children, that jury had no particular reason to infer it was natural for him to disinherit them and leave virtually his entire estate to woman with whom he had lived adulterously off and on and that his relations with his children were always cordial held, untenable, where there was no direct evidence that his relation with proponent was adulterous and testator had made provision in his insurance policies for his children who were adults of middle age living with their families in their own homes.

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am Jur, Wills §§ 360, 387, 388.
[2] 57 Am Jur, Wills § 361.
[3] 57 Am Jur, Wills §§ 445-447.
[4] 57 Am Jur, Wills § 435.
[5] 57 Am Jur, Wills § 453.

4. SAME—UNDUE INFLUENCE—EVIDENCE—SUSPICION.

Undue influence may be shown by indirect and circumstantial evidence, but it must be evidence of probative force beyond mere suspicion.

5. SAME—UNDUE INFLUENCE—EVIDENCE.

Record in will contest *held*, devoid of testimony that would justify submitting to a jury the question of undue influence by proponent to whom the bulk of estate had been left under will disinheriting testator's middle-aged children.

Appeal from Muskegon; Fox (Noel P.), J. Submitted October 5, 1960. (Docket No. 22, Calendar No. 48,423.) Decided December 1, 1960.

In the matter of the estate of Archie Langlois, deceased, Ann Forton presented will for probate. Objections were filed by deceased's children, Melvin T. Langlois, Fern Balock, and Anna Esdale. Contest resulted in special findings of mental competency and absence of fraud, but a special finding of undue influence. Verdict and judgment of disallowance. Plaintiff proponent appeals. Reversed and remanded with order to admit will to probate.

*Smedley & Spaniola,* for plaintiffs.

*John S. White,* for defendants.

KELLY, J. Proponent of the will requested submission of the following special questions:

"1. Was Archie Langlois mentally incompetent to make a will on August 30, 1957?"

"2. Was the signature of Archie Langlois obtained through fraud?"

"3. Was the will of Archie Langlois the result of undue influence?"

The jury answered questions 1 and 2 with a "No" and answered "Yes" to question 3 and, also, found

that the writing purporting to be the last will and testament of Archie Langlois is not in fact and does not constitute the last will and testament of said deceased.

Proponent's motion for judgment notwithstanding verdict was denied, and judgment was entered that "said instrument be not allowed as the last will and testament of Archie Langlois, deceased."

Appellant claims: (1) The court should have taken from the jury the question of undue influence; and (2) The special finding of the jury as to undue influence was contrary to the evidence.

Langlois was hospitalized on July 27, 1957, and remained in the hospital until August 30, 1957, the date he executed his will. He died the following November 23d. He was 68 years of age at time of death. Referring to the hospitalization period (July 27th to August 30th), appellees state: "The key facts from which contestants infer undue influence occur during this period."

In *In re Carlson's Estate*, 218 Mich 262, we dealt with a case where the jury returned a verdict against the will and answered special questions, finding that testatrix was mentally competent but that the will was the result of undue influence. On motion, proponent had judgment *non obstante veredicto*. In affirming the court, we said (p 264):

"The verdict of the jury may be considered as ending the contest as to the mental competency of the testatrix, and we will consider the question of whether there was evidence to go to the jury upon the issue of undue influence, and upon this we must have in mind the fact that the testatrix was mentally competent to make the will."

Appellees concede:

"The only issue in this case is sufficiency of evidence to create a jury question of undue influence

and to sustain the jury's verdict vitiating the will on that ground. Contestants recognize that will contests often tempt juries to remake wills in the teeth of a testator's actual intent. Contestants concede a careful analysis of evidence is necessary. Nevertheless, the test should be the same for all cases on appeal from denial of judgment notwithstanding the jury verdict."

The record sustains the conclusion that the will was contested on the grounds of mental incompetency. The jury determined that testator was mentally competent and appellant and proponent claims: "An attack on a will on the ground of mental incapacity negatives and dispenses with the question of undue influence."

Appellees, however, state:

"Contestants, on the other hand, say that evidence of Langlois' mental condition is highly relevant on the issue of undue influence. * * * *It is reasonable to say that less evidence of undue influence should be required on this appeal in view of the unusual susceptibility of the testator.*"

Appellant states: "Sixteen witnesses and not a word of force, coercion, et cetera, or anything that could be accepted as evidence of undue influence at any time, before, after, or at the *time* the will was executed, which is the *time* that counts."

Appellees endeavor to sustain the jury's decision of undue influence by opportunity, as evidenced by their statement that:

"Certainly Ann Forton had the opportunity to influence Langlois. She visited him 3 times a day for about 6 weeks in Mercy Hospital. Her son, Jim, was there about every week day. * * *

"Over a period of years Langlois lived with Ann Forton from 1/3 to 1/2 the time. The jury could infer this relationship was adulterous."

In this regard there was no direct evidence which would sustain the fact that the relationship was adulterous.

This Court has definitely established that undue influence may not be inferred from acts of kindness —it must be proved. *In re Lacroix's Estate,* 265 Mich 59. Also, we dealt with the question of opportunity in *In re Hayes' Estate,* 255 Mich 338, and in *In re Jennings' Estate,* 335 Mich 241.

In the *Hayes Case, supra,* Hayes willed his estate in excess of $190,000, to proponent, R. Ellen Green, "to whom he referred in his will as 'my friend, who has lived in my home for many years.'" The Court said (pp 343, 345):

> "A careful review of this record does not disclose any other testimony tending to establish contestants' claims of undue influence or delusions. The most that can be said of this record is that by reason of their close relationship in the same household proponent had the opportunity to attempt to exercise any undue influence. This is not sufficient. *In re Carlson's Estate,* 218 Mich 262; *Hoagland v. Reedy,* 237 Mich 691. * * *
>
> "Appellants stress the fact that Miss Green accompanied testator to the attorney's office. We think this circumstance is of no importance. For years these two seem to have been quite constantly together."

We quote from the *Jennings Case, supra* (pp 247, 248), as follows:

> "Influences to induce testamentary disposition may be specific and direct without becoming undue as it is not improper to advise, persuade, solicit, importune, entreat, implore, move hopes, fears, or prejudices or to make appeals to vanity, pride, sense of justice, obligations of duty, ties of friendship, affection, or kindred, sentiment of gratitude or to pity for distress and destitution, although such will would

not have been made but for such influence, so long as the testator's choice is his own and not that of another; that influence, to avoid a will, must be such as prevented testator from doing as he pleased with his property. Applying these tests, we find nothing in the record to establish that the will in question was the result of undue influence on defendant's part or that it did not represent the free judgment and discretion of testator in the disposition of his property."

Appellees endeavor to sustain undue influence by stating:

"There is no particular reason for the jury to infer it was 'natural' for Archie Langlois to disinherit his children, the contestants, and leave virtually his entire estate to Ann Forton, with whom he had lived adulterously off and on. Langlois' relation with his children was always cordial."

Appellees' claim is not tenable. Testator made provision for his children as beneficiaries in his insurance policies. Testator's children were adults of middle age, living with their families in their own homes, and the following from our decision in *In re Bulthuis' Estate,* 232 Mich 129, 139, is applicable:

"Deceased was under no legal or moral obligations to leave any of her property to any one of the parties to this action. They were adults of middle age, living their own lives with their families in their own homes, apparently in comfortable circumstances. No ill health or other misfortunes are shown to have befallen any of them especially appealing to her bounty. She could make such disposition of it as she saw fit. She had the legal right to bestow her bounty where and as she desired, to favorites in her own family or to others. No question is raised as to her mental competency to do so. The only direct evidence of any effort by Henry to influence her in making her will contrary to her wishes was dis-

regarded by her when she made this will while living in his home. The circumstances shown do not in our opinion have inferential probative force beyond mere suspicion. They furnish no legal basis for an ultimate inference that deceased's free agency was destroyed to the point where she was under such restraint and compulsion that it can be found by a preponderance of evidence this will was not dictated by her as she of her own will concluded she desired it to be."

Appellees endeavor (we believe desperately) to sustain the jury's verdict of undue influence by stating:

"*With respect to the actual preparation and execution of the will on August 30, 1957 (or before), the jury could have disbelieved much of the testimony of Ann Forton and Attorney Linck—in fact, could have inferred from their testimony that Ann Forton dominated Langlois and forced her will upon the testator, something attempted to be hidden on trial of the case. * * ***

"The first important point with respect to credibility on this appeal is the great divergence between the testimony of most other witnesses and that of Ann Forton and Linck on the subject of Langlois' mental condition at Mercy Hospital. Although Ann Forton was with Langlois much of each day and Linck was there several times, neither admitted any mental infirmity in Archie Langlois."

Nothing in this record sustains appellees' conclusion, which is based only on suspicion rather than fact. In *In re Fay's Estate,* 197 Mich 675, 686, 687, we stated:

"Unquestionably undue influence may be shown by indirect and circumstantial evidence, but it must be evidence of probative force beyond mere suspicion, and we do not think it can be fairly said as a matter of law that the incidents urged raise inferences that deceased's free agency was destroyed and he acted

under such coercion, compulsion, or constraint that the will did not truly proceed from him according to his wishes, which is the test of undue influence. *In re Williams' Estate,* 185 Mich 97.

"As before intimated, it cannot be said that testator's disposition of his property was so contrary to natural justice as to raise the inference it was against his own judgment and desire. If of testamentary capacity, he had absolute right to dispose of his estate as he chose, even to the total exclusion of his heirs or to give it to any one of them whom he preferred."

The record is devoid of testimony that would justify submitting to a jury the question of undue influence. Appellant's request that: "The judgment of the circuit court should be reversed, and case remanded for entry of judgment for proponents, sustaining the will in its entirety, and for remand thereafter to the probate court with directions to admit the will to probate" is granted.

Reversed. Costs to appellant.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.