*In re* COOCH ESTATE.

GREITZER *v.* RING.

1. WILLS—REVOCATION—EVIDENCE.

Issue as to whether the intended will consisted of 1 or 2 pages, and whether, if it consisted of 2 pages, the testatrix later destroyed the second page thereof *held*, for jury under evidence presented in contest of undated instrument presented for probate.

2. SAME—REVOCATION—EVIDENCE—DECLARATIONS OF TESTATRIX.

A will may be revoked by burning, tearing, canceling, or obliterating it with the intention of revoking it by the testatrix or by some person in her presence and by her direction, or by some other duly executed will, codicil, or other duly-executed testamentary disposition, and declarations of the testatrix with respect to the matter of revocation should be permitted to go to the jury at least where there is some other evidence to support the claim that the instrument is not as complete as testamentarily intended (CL 1948, § 702.9).

3. SAME—ABSENCE OF DATE.

The absence of a date on will presented for probate supported claim of contestants that such instrument was not complete as testamentarily intended.

4. SAME—STATUTES.

The issue of whether or not an instrument presented for probate should be admitted to probate is to be determined by the law of this State, not law taken from elsewhere, there being statutory provisions pertinent to such matter.

CARR, C. J., and DETHMERS and KELLY, JJ., dissenting.

Appeal from Allegan; Smith (Raymond L.), J. Submitted April 4, 1962. (Docket No. 14, Calendar No. 49,089.) Decided September 7, 1962.

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur, Wills § 570.
[2] 57 Am Jur, Wills §§ 456, 562–565.
Admissibility of declarations of testator on issue of revocation of will. 172 ALR 354.

In the matter of the estate of Bertha Cooch, deceased, Hilda Greitzer presented will for probate. Contest entered by Roy Ring and 3 other heirs. Order disallowing will entered in probate court. Directed verdict and judgment in circuit court admitting will to probate. Contesting defendants appeal. Reversed and remanded for new trial.

*Dilley & Dilley* (*Albert R. Dilley,* of counsel), for plaintiff, proponent.

*Leo W. Hoffman* and *Frederick D. McDonald,* for defendants, contestants.

KELLY, J. (*dissenting*). Bertha Cooch, 83 years of age, a resident of the village of Wayland, Allegan county, died at her home November 19, 1959. She left surviving her 13 nieces and nephews, and made bequests to 4 of them in her will but made no provision for the disposition of the residue of her estate.

Plaintiff Hilda Greitzer, a niece, was named executrix. Upon filing the will for probate, plaintiff's brother, defendant LeRoy Ring, and 3 other nieces and nephews of deceased, filed objections to the admission of the will, claiming undue influence, lack of mental capacity, and that the purported will had been revoked.

The probate judge disallowed the will on the grounds of insufficient proof to show that it was the last will and testament of deceased and that it had been procured by undue influence. Plaintiff appealed to the circuit court and the trial resulted in a directed verdict in favor of the will. From this determination, defendants appeal.

We shall first consider if the document offered for probate was the last will and testament of deceased. It is defendants' claim that the document offered (exhibit 1) is but 1 page of a 2-page will and

that deceased had torn up the other page, thereby revoking the will.

The confusion on this point stems from the fact that the witnesses to the will, aged neighbors of deceased, had witnessed a prior will of deceased. They (Edward Blaine and Bertha Blaine) testified that late in 1958 or early in 1959, the deceased came to their house and asked them to sign as witnesses to her will. This will had 2 pages, both of which were signed by them. At a later date, 4 or 5 months before deceased's death in November, 1959, plaintiff's husband, John Greitzer, came to the Blaine home and asked them to come over to the deceased's house to witness her will. They went over, and deceased, in their presence, tore up a piece of paper, which deceased stated was a part of her will, and then she asked them to sign her new one, which had 1 page. They did not see the contents of the wills and at first stated that they would not know if the will offered for probate was in fact the second page of the 2-page first will or whether it was the 1-page second will.

The document offered for probate was undated, but otherwise appears to be complete in and of itself. There is no reference to any other page, or that it is a part of a will.

The claim that it is 1 page of a 2-page will is not supported by any evidence, but defendants seek to infer this from alleged declarations of the deceased to Attorney Leo W. Hoffman and to defendant Le-Roy Ring and his wife, Mildred Ring, that she had torn up her will.

Witnesses Edward and Bertha Blaine, having witnessed 2 wills for deceased and not having seen the contents of either, were at first confused on this point, but, after being shown a document (Exhibit 2) dated December 9, 1958, which made certain testamentary dispositions and which was signed by the

deceased and witnessed by them, concluded that the undated document, the will offered for probate, would be the will signed at deceased's home some 4 or 5 months prior to her death.

We agree with the trial court's determination that the document offered for probate was the legally executed last will and testament of deceased.

We next consider if this will was revoked. The statute (CL 1948, § 702.9 [Stat Ann 1943 Rev § 27.3178(79)]), relative to revocation of a will, states:

"No will nor any part thereof shall be revoked, unless by burning, tearing, canceling or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil in writing, executed as prescribed in this chapter; or by some other writing, signed, attested and subscribed in the manner provided in this chapter for the execution of a will; excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator."

The will obviously was not burned, torn, canceled, or obliterated, nor has another will or codicil executed by the deceased revoking this will been brought forth, although at a guardianship proceeding several months prior to her death, it appears deceased did have a discussion with Attorney Leo W. Hoffman relative to the drawing up of a new will and the probate judge advised her that she should have a new one drawn. Was, then, testatrix's declarations to various witnesses that she had torn up part of her will sufficient to revoke the will?

No case is cited by either party similar to the situation presented here. In 57 Am Jur, Wills, p 322, § 460, it is stated that there can be no revoca-

tion by parol·declarations of the testator without an overt act.

There is no revocation even if testator is prevented from doing so by fraud. Minnesota has a statute similar to ours, and in *Graham* v. *Burch,* 47 Minn 171 (49 NW 697, 28 Am St Rep 339), the testator placed his will in a stove with kindling not yet ignited, intending the will to be destroyed when the fire should be lighted. A person present, with the design of thwarting the purpose of the testator (and during his absence), took the will out of the envelope and secreted it, so it was thereby saved from destruction without the knowledge and consent of the testator. It was held that the will, in the absence of an overt act, had not been revoked even though the act was prevented by fraud.

Illinois also has a statute similar to ours, and in *Bohleber* v. *Rebstock,* 255 Ill 53 (99 NE 75, 41 LRA NS 105, Ann Cas 1913D, 307), the deceased wanted to change his will but was too feeble to leave his home. Certain beneficiaries refused to call a lawyer and threatened violence to anyone who would bring a lawyer or assist deceased in changing his will. The Illinois court in rejecting a bill in equity to have the will set aside also held that in the absence of some overt act as required by the statute there could be no revocation even under these circumstances, stating (pp 56, 57):

"Prior to the enactment of any legislation upon this subject in England, the question whether an intention to revoke a will was sufficient to constitute a revocation was considered by the courts, and the courts held that such an intention was sufficient to effect a revocation. These decisions led to such uncertainty in the stability of wills and to such suspicion that wills were being defeated by perjury that an act was passed defining what was necessary to the revocation of a will by the testator in his

lifetime, and, as above stated, the various States of this country have enacted similar legislation. It will be seen our statute provides that no will or codicil shall be revoked otherwise than by burning, canceling, tearing or obliterating the same by the testator himself, or by someone in his presence and by his direction and consent, or by some other will or codicil duly executed. Under similar statutes the courts of this country have practically uniformly held, and text-book writers also lay down the rule, that the mere intention to revoke a will, unaccompanied by any act of the testator to execute that intention, will not be sufficient to revoke the will, even though the execution of the intention was frustrated by the fraud and improper conduct of other persons. Slight acts of tearing, burning or canceling, with the purpose and intention of revoking a will, may be sufficient for that purpose, but the intention to revoke, unaccompanied by any of the acts of destruction required by the statute, is insufficient."

See, also, *Trice* v. *Shipton,* 113 Ky 102 (67 SW 377, 101 Am St Rep 351).

Revocation could be accomplished only by the overt acts required by statute, or by another will or codicil. Deceased failed to do either, and revocation based solely upon her declaration that she had torn up her will cannot be allowed. To hold otherwise would open the door to the fraudulent practices which the statute is designed to avoid.

Defendants also seek to have the will set aside on the claim that it was obtained through undue influence. This is based upon the testimony of defendant LeRoy Ring, his wife, Mildred, and defendants' witness Myrtle Lawther, to the effect that deceased told them plaintiff and her husband just moved in without her knowing it; that they mistreated her; that plaintiff's testimony indicated there was some discussion of deceased deeding her house to them and making a will; that plaintiff in March,

1959, caused a petition to be prepared declaring deceased to be mentally incompetent, and that plaintiff discouraged their visits to deceased.

Testimony of neighbors of the deceased, on the other hand, depict the deceased as being mentally sound, fond of and appreciative of plaintiff and her husband and of what they were doing for her. Deceased's physician testified that she was mentally competent up to a time shortly before her death.

The burden of showing undue influence is upon the contestants of the will to establish by satisfactory proof the existence of fraud or undue influence of such character as to vitiate the instrument. *In re Johnson's Estate,* 326 Mich 310.

Influence to void a will must be such as prevented testator from doing as he pleased with his property, and it may be shown by indirect or circumstantial evidence, but it must be evidence of probative force beyond mere suspicion. *In re Langlois Estate,* 361 Mich 646.

In the instant case there is no direct proof of undue influence, nor can it be said that undue influence has been shown, indirectly or circumstantially, by satisfactory proofs. It would seem that had plaintiff and her husband exercised such claimed influence over deceased they would have procured a deed to the house and a will disposing of all of deceased's property in a more generous portion to plaintiff than under the present will. The specific alleged acts of mistreatment consisted of the refusal by plaintiff to give deceased a peppermint candy until she took her medicine and that on this occasion plaintiff twisted a cup out of her hand; that plaintiff's husband once threw deceased to the floor when deceased did not answer plaintiff's call. This last act, even if true, occurred after the will was executed. If the refusal to give deceased a peppermint was to

get her to take her medicine, we fail to see how it could be considered undue influence.

Defendants also claim deceased was feeble-minded, although they do not specifically challenge the will on this ground. Suffice it to say, that this claim is not supported by the evidence and is even contrary to the testimony of defendant LeRoy Ring and his wife, Mildred Ring.

The dispositions made by deceased in the will, while not disposing of all her property, were to the natural objects of her bounty. The most that could possibly be said of defendants' assertions, is that they raise a suspicion of undue influence. As stated in *In re Langlois Estate, supra,* this is not enough.

The directed verdict of the lower court should be affirmed. Costs to appellee.

CARR, C. J., and DETHMERS, J., concurred with KELLY, J.

KAVANAGH, J. We cannot agree with Justice KELLY's disposition of this case. The question of revocation was for the jury and not the trial judge. The conflicting testimony given by witnesses Edward and Bertha Blaine, the general purport of which is related in Justice KELLY's opinion, presents this issue:

Whether after due execution and attestation the intended last will and testament consisted of 1 or 2 pages; whether, if it consisted of 2 pages, the testatrix later destroyed the second page thereof; and whether in these circumstances of doubt Attorney Hoffman's testimony accurately reflected an intent to revoke on the part of such testatrix. Mr. Hoffman testified:

"She didn't want Hilda to have it and she had torn up the other part of the will and she didn't

think it was any good, that she wanted me to draw a new will."

Which version of recollection by witnesses Edward and Bertha Blaine did the trial judge have a right to accept as a matter of law? Justice KELLY says the second; whereas we conclude the trial judge had no choice and that he should have submitted the question to the jury. See *Erickson* v. *Soyars,* 356 Mich 64, 69, where Justice DETHMERS, writing for the Court, said:

"A witness may correct his testimony. It is for the jury to determine the truth of the testimony given under such circumstances. *Erickson* v. *Milwaukee, L. S. & W. R. Co.,* 93 Mich 414, 418."

In *Alley* v. *Klotz,* 320 Mich 521, Justice CARR, in a unanimous opinion, stated (p 532):

"It was for the jury, also, to weigh conflicting statements made by any witness, and determine which statements, if either, were correct."

Justice CARR then went on to cite *Neesley* v. *Lord,* 297 Mich 163, to the same effect. See, also, *Wilson* v. *City of Detroit,* 299 Mich 473.

There is some testimony that Mrs. Cooch tore up a piece of paper in the presence of 2 witnesses and said to them that what she tore up was a part of her will. Further, the instrument as submitted bears no date. Since wills usually bear dates, the absence thereof supports the claim of appellants that such instrument is not complete as testamentarily intended.

Whether the trial judge was right in directing a verdict for the proponent is a matter governed by Michigan law, not law taken from 2 or 3 other States. In Michigan the rule is stated in the case of *Lawyer* v. *Smith,* 8 Mich 411, 423, 424 (77 Am Dec 460), where it was said:

"It was for the jury to give such weight to their evidence as they might think it entitled to, under all the circumstances of the case.

"But the judge erred, we think, in refusing to receive evidence of the declarations of the testatrix that she had destroyed her will, and in not admitting a letter of hers, stating her will was destroyed. Such evidence is not admissible as proof in itself of a revocation, for the statute provides, 'no will, nor any part thereof, shall be revoked unless by burning, tearing, canceling or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction;' 'or by some other will, codicil or other writing executed in the manner provided for the execution of a will.'* * * * A will found as this was, in a barrel among old letters and other papers of no account, and in the mutilated condition stated, needs some explanation of these circumstances to admit it to probate. The piece torn out at the top and the separation of the half sheets cannot be accounted for by the age of the instrument. They are evidence of violence, or an intentional injury to the instrument; but whether done by the testatrix or some other person; and if done by her, whether accidentally, or intentionally and for the purpose of revoking her will, were questions of fact to be determined by the jury. *To aid them in arriving at a correct conclusion on these points, and not as separate and independent evidence of a revocation, we think the declarations of the testatrix should have been permitted to go to the jury, for what they were worth, under all the circumstances."* (Emphasis supplied.)

Justice Kelly errs in relying upon the general rules which appear in 57 Am Jur, Wills, p 322, § 460. It is to be noted there are no Michigan cases cited in support of the text. *Lawyer* v. *Smith, supra,* sets forth the Michigan rule.

---

* For statute, now current, see CL 1948, § 702.9 (Stat Ann 1943 Rev § 27.3178[79]).—Reporter.

The judgment of the circuit court is reversed and the case remanded for new trial.  Appellants shall have costs.

BLACK, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred with KAVANAGH, J.