# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JOHN STIRLING WHITE TRUST.

JAMES WHITE, BRUCE WHITE, JEFF WHITE,
and DOUG WHITE,

        Petitioners-Appellants,

v

DAVID WHITE and THOMAS BRENNAN
FRASER,

        Respondents-Appellees.

UNPUBLISHED
September 13, 2018

No. 338008
Oakland Probate Court
LC No. 2015-365903-TV

*In re* ESTATE OF JOHN STIRLING WHITE.

JAMES WHITE, BRUCE WHITE, JEFF WHITE,
and DOUG WHITE,

        Petitioners-Appellants,

v

DAVID WHITE and THOMAS BRENNAN
FRASER,

        Respondents-Appellees.

No. 338009
Oakland Probate Court
LC No. 2014-360814-DA

Before: SWARTZLE, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

In Docket Nos. 338008 and 338009, petitioners, Jeff White, James White, Bruce White, and Doug White, appeal as of right two orders granting summary disposition to respondents, David White and Thomas Brennan Fraser, regarding the petitions filed by petitioners to set aside

-1-

the will of their father, John Stirling White (Decedent), as well as the John Stirling White Trust. We reverse and remand for further proceedings.

This case arises from challenges by petitioners to Decedent's amended will and trust, which left a majority of Decedent's estate to his oldest son, David. The Decedent's original will and trust, in 2004, devised Decedent's estate in an equal fashion to all five sons. Decedent's assets were John Stirling White, LLC, which owned a commercial building in Farmington, Michigan, called "the Winery," and a manufactured home. Pursuant to the 2004 trust, the Winery would be distributed equally to David, James, and Bruce, the three sons who managed the Winery, the manufactured home would be distributed to David, and all other real and personal property would be distributed equally between the five sons. In 2012, a contentious divide grew between the family, with petitioners on one side, and Decedent and David on the other. Eventually, Adult Protective Services filed a petition for conservatorship asserting that Decedent was unable to properly manage his property and business affairs due to a mental deficiency. In February 2013, following a hearing, the probate court denied the petition for conservatorship and appointed David as co-trustee of the trust. Not too long thereafter, in March 2013, Decedent executed an amended will and trust (2013 Amendment). The 2013 Amendment awarded 80% of Decedent's estate to David, and petitioners were each awarded 5%.

Decedent died on May 3, 2014. Following Decedent's death, petitioners filed petitions to set aside the 2013 Amendment based on undue influence and lack of testamentary capacity. Respondents moved for summary disposition of the petitions on the ground that, despite Decedent's diagnosis in 2012 of mild cognitive impairment, he was able to satisfy the standard for testamentary capacity at the time he decided to amend his estate plan and award most of the estate to David. The probate court agreed with respondents that, despite the Decedent's impairment, the evidence offered supported a finding that he possessed testamentary capacity. The probate court also granted summary disposition for respondents on petitioners claim of undue influence, ruling that there was no genuine issue of material fact to support that theory, MCR 2.116(C)(10). Specifically, the court ruled that petitioners did not produce any affirmative evidence that David actually exercised undue influence. The court reasoned that David merely had the opportunity to put false thoughts into Decedent's head and that opportunity alone is not sufficient to prove undue influence.

The probate court also rejected applying the presumption of undue influence. Specifically, the probate court found that there was no evidence of a fiduciary relationship between Decedent and David at the time Decedent first expressed his desire to amend his estate plan. The probate court found that the evidence showed that Decedent wanted to make the 2013 Amendment and award everything to David as early as April 2012. The probate court therefore found that any confidential or fiduciary relationship between David and Decedent that was established after this time was not indicative of undue influence. The probate found that denying the motion for summary disposition would allow this case to proceed to the jury based only on speculation.

On appeal, petitioners argue that the probate court erred in granting summary disposition under MCR 2.116(C)(10) based on the determination that no genuine issues of material fact existed pertaining to undue influence of Decedent's 2013 Amendment. We agree.

This Court reviews a motion for summary disposition de novo. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). A motion for summary disposition under MCR 2.116(C)(10) challenges the factual sufficiency of a plaintiff's claim. *Id*. at 115. The trial court considers the evidence in the light most favorable to the nonmoving party. *Id*. Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 116 (citation and quotation marks omitted). There is a genuine issue of material fact "when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (citation and quotation marks omitted). The trial court in deciding the motion must view the substantively admissible evidence submitted up to the time of the motion in a light most favorable to the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999).

To establish direct evidence of undue influence:

> [It] must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overcome volition, destroy free agency and impel the grantor to act against his inclination and free will. Motive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, are not sufficient. [*Kar*, 399 Mich at 537.]

A presumption of undue influence arises when there is evidence of (1) a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest that he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. *Kar v Hogan*, 399 Mich 529, 537; 251 NW2d 77 (1976), overruled on other grounds in *In re Estate of Karmey*, 468 Mich 68; 658 NW2d 796 (2003). Once the presumption is established, the party wishing to enforce the trust or will must offer other evidence to rebut the presumption. *Id*. at 542. If sufficient rebuttal evidence is offered, then the challenging party's claim of undue influence will fail unless other evidence exists that "overcomes" the rebuttal evidence. *Id*. However, if the party seeking to enforce the will fails to offer sufficient evidence rebutting the presumption of undue influence, then the challenger's burden to show that undue influence occurred is satisfied. *Id*. A trust or will is only invalidated by undue influence when the decedent's free agency was overcome to the extent that the will or trust expressed the desires of someone other than the testator. *In re Hannan's Estate*, 315 Mich 102, 123; 23 NW2d 222 (1946). The dispositive question is whether the decedent had the capacity to act on his own motives, and was free to make his own decisions, notwithstanding any persuasion from others. *Id*. The party challenging a trust or will has the burden of proving undue influence. *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 701; 880 NW2d 269 (2015).

Petitioners argues on appeal that the probate court should have allowed the case to proceed to a jury because the presumption of undue influence was established and a reasonable juror could conclude that undue influence was exercised. Petitioners argue that the elements for the presumption of undue influence were met because, at the time that Decedent executed the 2013 Amendment, David was Decedent's primary caretaker and co-trustee of the trust, he stood to benefit from the 2013 Amendment as he inherited a majority of decedent's estate, and David

had an opportunity to influence Decedent because he was heavily involved in Decedent's daily life.

The probate court found that the presumption of undue influence did not exist. The probate court's reasoning hinges on the idea that Decedent had to be in a confidential or fiduciary relationship with David at the time Decedent first expressed his desire to amend his estate plan rather than at the time Decedent actually created the 2013 Amendment. However, to give rise to a presumption of undue influence, the pertinent question is whether there was a confidential or fiduciary relationship between David and Decedent *at the time the 2013 Amendment was created.* See *Bill & Dena Brown Trust,* 312 Mich App at 702 (finding no presumption of undue influence because the confidential or fiduciary relationship existed after the questioned documents were created rather than "at the time the questioned documents were created").

Here, it is undisputed that David, as the co-trustee, was in a fiduciary relationship with Decedent at the time the 2013 Amendment was executed.[1] The evidence also showed that David had the opportunity to influence Decedent's decisions, as he was Decedent's primary caretaker. Finally, David's inheritance of a majority of Decedent's estate based on the 2013 Amendment clearly meets the third requirement that he benefit from the transaction. Accordingly, the petitioners met all of the elements to establish a presumption of undue influence.

The probate court then proceeded to make the factual determination that even if the presumption was established, petitioners failed to show any evidence of undue influence in the face of respondents' rebuttal evidence which permitted summary disposition. Generally, "whether the presumption of undue influence is rebutted is a question to be resolved by the finder of fact." *In re Peterson Estate*, 193 Mich App 257, 261; 483 NW2d 652 (1992). Once rebuttal evidence is introduced, the presumption, originally a mandatory inference, is reduced to a permissible inference. *Kar,* 399 Mich at 548. Unless the rebuttal evidence meets the standard

---

[1] We find that David, as co-trustee, meets the definition of a "fiduciary relationship." Fiduciary relationship is defined as

> [a] relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship. Fiduciary relationships-- such as trustee-beneficiary, guardian-ward, agent-principal, and attorney-client-- require the highest duty of care. Fiduciary relationships [usually] arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer [*In re Karmey*, 468 Mich at 74 n 2 (citation omitted)].

for a directed verdict[2] i.e., "whether reasonable minds taking evidence in a light most favorable to the nonmovant, could reach different conclusions regarding a material fact," the presumption, as a permissible inference, is sufficient to get the case before the jury. *Bill & Dena Brown Trust,* 312 Mich App at 703 *Id*. at 537 (citation and quotation marks omitted). It is well settled that a trial court cannot make findings of fact or weigh credibility in deciding a motion for summary disposition. *Peterson*, 193 Mich App at 261. Here, because the presumption existed, even if respondents provided rebuttal evidence, there was a factual question that could only be resolved at trial—whether the rebuttal evidence was sufficient in light of petitioners' proffered evidence establishing undue influence. Thus, it was inappropriate for the probate court to grant summary disposition.

The probate court seemingly determined that petitioners must provide direct evidence of undue influence. However, as the Michigan Supreme Court has held, "[u]nquestionably undue influence may be shown by indirect and circumstantial evidence, but it must be evidence of probative force beyond mere suspicion . . . ." *In re Langlois Estate*, 361 Mich 646, 652; 106 NW2d 132 (1960) (citation and quotation marks omitted). "Undue influence may be insidious and not in front of witness, but fair inferences can be drawn from the facts." *In re Persons Estate*, 346 Mich 517, 532; 78 NW2d 235 (1956) (citation and quotation marks omitted). "The question of credibility is always one for the jury who may not accept all or any part of testimony that they believe to be true." *Id.*

Here, there was an abundant amount of circumstantial evidence presented indicating that the 2013 Amendment was the product of David exerting undue influence upon Decedent. For example, Art Pisani, Decedent's previous attorney, testified that when he met with Decedent and David in July 2012, David did most of the talking and Decedent seemed confused. At this meeting, Decedent asked Pisani about amending his estate plan to favor David. Pisani testified that this raised a "red flag" because "it was totally inconsistent with what [Decedent] had set forth in his 2004 will and trust." Pisani then asked David to step outside so that he could speak to Decedent alone, but David refused. Pisani ultimately refused to amend Decedent's estate plan because leaving everything to David was "so contrary" to everything Decedent had discussed and done in the past. Further, Pisani testified that David was "certainly" influencing Decedent and that he would not draft or amend a will if he felt the person was subject to undue influence. Moreover, in the conservatorship proceeding, Dr. Swistak was appointed to examine Decedent's mental health. In November 2012, Dr. Swistak concluded that Decedent suffered from mild cognitive impairment consistent with early-state dementia, which could be progressive; that he was confused about his financial affairs; and that he "could be easily manipulated by family members in this regard." There was also testimony from Madelin White, Decedent's ex-wife, that evidenced that the 2013 Amendment was not the result of Decedent's free will. In her affidavit, Madelin stated that she knows Decedent "would never have voluntarily . . . amended his will and trust to leave everything to David." Madelin also stated that David threatened that

---

[2] "The standard applicable to directed verdicts is the same as that for a motion under MCR 2.116(C)(10)." *Bill & Dena Brown Trust,* 312 Mich App at 702 n 4.

Madelin would be put in a nursing home if she did not side with David. There was also evidence presented that showed that David isolated Decedent from other family members.

The evidence of Decedent's cognitive impairment and confusion, coupled with David's threats and isolating Decedent represent circumstantial evidence that the jury can consider to find that the 2013 Amendment was the result of David's undue influence rather than Decedent's own free will. Although several witnesses, including Amber Atkins, Decedent's attorney at the time of the conservatorship proceeding who helped Decedent execute the 2013 Amendment, testified that Decedent did not appear to have been unduly influenced, when viewing the evidence in the light most favorable to petitioners, reasonable minds could differ on whether David exercised an undue influence over Decedent. Accordingly, the probate court erred in granting respondents' motion for summary disposition.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien